United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 07, 2022
Nathan Ochsner, Clerk

yahooIN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXES
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-35221** |
| JOHNNIE G. EICHOR, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| JOHNNIE G. EICHOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 21-3937** |
| | § | |
| BENSON SCOTT WYLY | § | |
| and | § | |
| PAM DALE WYLY, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Johnnie G. Eichor, and defendant, Benson Scott Wyly, are long term friends that entered into numerous contractual agreements over the years, all with Mr. Wyly and sometimes including defendant, Pam Dale Wyly, advancing funds to the plaintiff for his personal and/or business most of which were loans or disguised loans.[1]  Many of these agreements resulted in benefits to both parties; however, as evidenced at the trial, the plaintiff breached numerous others to the detriment of the defendants.  At issue in this trial were three of these agreements,[2] although there was testimony concerning some of the others.  For the following reasons, the Court grants judgment in favor of the plaintiff, orders the defendants to turnover possession of the real

---

[1] The plaintiff and defendants discussed six categories of transactions between the parties.  Five of which were loans or disguised loans.

[2] These agreements were all intended to be secured loans between the plaintiff and the defendants.  For the reasons stated herein they were not and could not have been secured as they violated the debtor's homestead protections and were additionally poorly drafted.

property located at 4012 Beechwood Drive, Pearland, TX 77864 on or before August 31, 2022[3] and awards title of the real property to the plaintiff.

## PROCEDURAL HISTORY

This adversary was filed on October 26, 2021 by Johnnie G. Eichor ("Eichor" or "Plaintiff") against Benson Scott Wyly, Pam Dale Wyly (collectively "Wylys" or "Defendants") and Keith A. Gross.  A First Amended Complaint was filed on November 10, 2021 at ECF No. 8. The Plaintiff subsequently dismissed Keith A. Gross on January 31, 2022 from the case.  A Second Amended Complaint was filed on July 28, 2022 (the "Complaint"),[4] which was the live pleading at trial. The Defendants filed their answer to the Complaint on August 11, 2022.  Trial was held August 23, 2022.

## FACTS

Eichor purchased real property located at 4012 Beechwood Drive, Pearland, TX 77864 (the "Property") in 2000 as a single man.[5]  It was his separate property and his residence at the time of his marriage to Krisana Shinese Eichor ("Mrs. Eichor") sometime in 2004 or 2005. Thereafter, Mr. and Mrs. Eichor lived in the Property with their two daughters until they separated sometime in late 2018 or early 2019.

Prior to June of 2015, Eichor was having trouble keeping his demolition business afloat and discussed his intention to borrow money to Benson Wyly, at which time Mr. Wyly offered to loan him the money he needed.  The parties agreed that the Wylys would lend the Mr. and Mrs. Eichor $50,000.00 for one year; at which time, the loan would be repaid with $10,000.00 interest. The Wylys requested security for the loan and Mr. and Mrs. Eichor agreed to use the Property and

---

[3] This was the subject of an interim order (ECF No. 85).
[4] ECF No. 66
[5] ECF No. 79-1

a boat to secure the loan. Mr. Wyly requested that his attorney, Keith Gross, prepare the documents for the loan, identifying the security. The parties agreed to two more loans in the same fashion, one for an additional $50,000.00 with $70,000.00 due after four months, and a final one that modified the second agreement for an additional sum of money that would result in an amount due and owing of $126,000.00 on January 20, 2017. Each of these agreements stated that the Property was not Eichor's homestead, and that the Property would not be used as a homestead. It is these three agreements that are at issue in this case.

On June 25, 2015, the Wylys and Eichors entered into a contract entitled Sales Agreement.[6] After execution by all the parties, this Sales Agreement was filed in the real property records of Brazoria County, Texas, under Instrument Number 2015029141 on June 29, 2015. It is undisputed that this agreement was satisfied in full by Eichor, although his payment was made after the maturity date. The evidence showed that no release was ever filed in the real property records regarding this agreement.

Prior to the maturity and satisfaction of the Sales Agreement, the Wylys and Eichors entered into a new agreement on May 26, 2016 entitled Sales Agreement Two.[7] Unlike the first Sales Agreement, this document was not filed in the Brazoria County real property records. It is undisputed that Eichor made no payments on this agreement.

Because of the failure to make any payments on Sales Agreement Two, the parties modified and reformed Sales Agreement Two, by entering into Sales Agreement Three on January 20, 2017.[8] Again, Sales Agreement Three was not recorded in the Brazoria County real property records.

---

[6] ECF No. 79-2
[7] ECF No. 79-6
[8] ECF No. 79-9

Each of these agreements purported to sell the same Property and the same boat to the Wylys. The provisions regarding the sale of these two items were similar in each of the agreements except as to the price paid for the sale of the Property, the price required by the Eichors to terminate the contracts, and the dates that the Eichors could terminate the contracts. Although there was testimony by both parties that Eichor did make some payments under Sales Agreement Three, the evidence was not clear as to how much was actually paid towards the $126,000.00 that was due and owing on January 20, 2017.

Eichor testified that sometime in late 2018 or early 2019, he and Mrs. Eichor separated, and later initiated a divorce proceeding. A decree was entered sometime after July 2021 that gave the Property to Eichor, but not possession until October 26, 2021.

In the meantime, Eichor also fell behind on paying the ad valorem taxes due on the Property for the tax years of 2017 and 2018, and the taxing authorities filed suit in Brazoria County on June 5, 2019.[9] Mr. and Mrs. Eichor, the Wylys, the United States of America-Internal Revenue Service, In Rem Only, Golden Equipment Company, In Rem Only and Power Equipment Company, In Rem Only were named as defendants in this suit. Eichor testified that he settled this suit with the taxing authorities and paid the delinquent taxes. He also testified that he has continued to pay the taxes on the Property.

The Wylys filed a Petition in Intervention to Quite (sic) Title[10] (the "Intervention Suit") in this tax suit on October 5, 2020, with Mr. and Mrs. Eichor, the Wylys and Plearland (sic) Independent School District as parties requiring service. The petition alleges that pursuant to a contract entered into in January 2017, the Wylys paid $126,000.00 "in advance for the exclusive

---

[9] ECF No. 79-18; Case No. 103126-T; *Pearland Independent School District, et. al v. Johnnie G. Eichor, et al*; 239th District Court of Brazoria County, Texas.
[10] ECF No. 79-20

right to purchase the property on January 20, 2017." The petition further alleges that Mr. and Mrs. Eichor failed to exercise their right to terminate the contract on or before April 20, 2017; therefore, they "failed to perform under the terms of the agreement, and refuse (sic) to execute the documents necessary to complete the conveyance." It is only in the prayer for relief that the Wylys request a declaratory judgment that they are the "lawful owners of the residence." The evidence[11] showed and the parties agree that Eichor was served with this petition on April 6, 2021.

At some point prior to July 24, 2020,[12] due to defaults in other contractual agreements not at issue in this adversary, Benson Scott Wyly d/b/a SW Equipment Co., Inc. filed suit against Eichor d/b/a Prime Demolition, LLC requesting damages of $224,208.99 (the "Galveston County Suit").

On November 1, 2020, Eichor filed for relief under Chapter 7,[13] and was granted a discharge on February 9, 2021. His schedules listed the Property, state that it was community property, and exempts the Property as his homestead under Texas law. Benson Scott Wyly is listed as an unsecured creditor in the amount of $224,208.00. Eichor testified that he arrived at this amount from the Second Amended Petition that was filed in the Galveston County Suit. He also listed that lawsuit in his Statement of Financial Affairs. Mrs. Eichor was listed as a co-debtor in the petition.

Benson Scott Wyly filed a motion for default judgment in the Intervention Suit on June 24, 2021,[14] stating that he intervened in the tax suit and alleged that the Property was sold to him in January 2017. The arguments in support of the motion for default state that when a defendant does

---

[11] ECF No. 79-22
[12] The only document in evidence as to this suit is Plaintiff's Second Amended Original Petition filed on July 24, 2020 at ECF No. 79-16. Cause No. CV 81421, In the County Court at Law No. 2 Galveston County, Texas
[13] Case No. 20-35221
[14] ECF No. 80-3.

not answer, all allegations of facts in the plaintiff's petition are deemed admitted. The motion does reiterate the allegation in the Intervention Suit petition that Benson Wyly paid $126,000.00 in advance to acquire the Property in January 2017, and that Eichor failed to repay the amount due in full by April 20, 2017.

The evidence showed that Eichor was aware of the motion for default judgment and hired counsel to assist him. Correspondence entitled Mitigation Notice dated July 21, 2021[15] was sent to the Wylys' counsel advising that the filing of the motion for default judgment violated the discharge injunction from Eichor's Chapter 7 bankruptcy, that no appearance will be made in the Intervention Suit as an adversary would be filed in the United States Bankruptcy Court for the Southern District of Texas, and that any decision by the Brazoria County District Court may be void. The Wylys did not respond to this correspondence, but instead moved forward with getting a Default Judgment[16] on August 23, 2021 in the Intervention Suit. The judgment makes a specific finding that "**Intervenor** purchased the property on January 20, 2017," that Eichor "retained the right to rescind the contract until April 20, 2017 conditioned upon repayment of $126,000.00," and entered judgment that "Benson Scott Wyly acquired all right, title and interest on the property as of April 20, 2017 and that **Intervenor** Johnnie G. Eichor was divested of all right, title and interest in the property that same day." (emphasis added).

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b), and the standing order of reference from the District Court. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2). The bankruptcy court has the power to enter a final judgment in this adversary proceeding, subject to traditional rights of appeal. This adversary

---

[15] ECF No. 80-4.
[16] ECF No. 79-23

proceeding arises under bankruptcy case number 20- 35221 (the "Main Case") pending in this District and venue is proper pursuant to 28 U.S.C. § 1409.

## LEGAL ANALYSIS

**The Three Sales Agreements and Plaintiff's requests for findings**

### Sales Agreement dated June 2015

The testimony from both parties was that Mr. Wyly agreed to loan Eichor funds to keep his business afloat in 2015.  In order to ensure that these funds were protected, he requested that his attorney draft documents regarding the loan transaction.  It is these documents that are at issue.

Although there was some dispute about whether Eichor resided in the Property at all times from 2015 through 2021, Eichor carried his burden to establish that the Property was his homestead, and the Court finds that it was his homestead.[17]  Eichor testified that it was never his intent to sell the Wylys his homestead in June of 2015, but instead he agreed to use his homestead and his boat in order to secure the $50,000.00 loan.  Mr. Wyly testified that he believed that he actually purchased the Property and boat as a result of the execution of the Sales Agreement, but that Eichor repurchased the Property when he paid off the contract in 2016.  However, it was uncontested that there was no documentation showing a repurchase of the Property by Eichor.  The Court looks to the transaction itself to see if it has the indicia of a loan, and if so, it will be treated as such, regardless of the label.

The question is whether this was a contract to actually sell the homestead, a contract to purchase the right to acquire the homestead after certain conditions were met, or a mortgage.[18]  In

---

[17] *In re Stanford*, 573 B.R. 205, 216 (Bankr. W.D. Tex. 2017) ("Under Texas law, property that has been designated as homestead will not lose that character unless abandonment, death or alienation occurs.") (internal citations omitted).

[18] Texas follows the lien theory of mortgages.  Under this theory, the mortgagee is not the owner of the property and is not entitled to its possession.  *Taylor v. Brennan*, 621 S.W. 2d 592, 593-4 (Tex. 1981).

this case, there can be no forced sale or mortgage since the parties did not comply with Article 16, Section 50(a) of the Texas Constitution in the drafting the Sales Agreement.[19]

Texas courts apply the relation back doctrine in the context of contracts for the sale of real estate. Therefore, if real property is acquired under a contract for deed or installment contract, the deed could relate back to the time the contract was executed, not the time when legal title is conveyed.[20]  There were no deeds in this case, legal title remained with Eichor, and the evidence failed to show mutual assent to actually sell the Property sufficient to establish that the Sales Agreement was a contract to sell real property.

A loan is an advance of money made to or on behalf of an obligor, "the principal amount of which the obligor has an obligation to pay the creditor."[21]  When money is advanced to enable one to engage in a business venture with the understanding that the advance, plus an added amount are to be returned, there is a loan.[22]  Moreover, under Texas law, whether an instrument is actually a deed or is in fact a mortgage is a question of fact.[23]  Further, if the facts show that the parties intended the transaction to be a loan, and the evidence supports that finding, Texas law will impute the existence of a debt.[24]

---

[19] Section 50(a) states that the homestead is protected from a forced sale for the payment of all debts except those for (1) the purchase money thereof, (2) the taxes due thereon, (3) an owelty of partition by court order resulting from a divorce proceeding, (4) the refinance of a lien against a homestead, (5) work and material used in constructing new improvements thereon, (6) an extension of credit that is secured by a voluntary lien under a written agreement (also known as a home equity loan, which has mandatory requirements in order to be enforced), (7) a reverse mortgage, or (8) the conversion and refinance of a personal property lien secured by a manufactured home.
[20] *In re Jay*, 432 F.3d 323 (5th Cir. 2005).
[21] Tex. Fin. Code § 301.002(10).
[22] *Koch v. Boxicon*, *LLC*, 2016 WL 1254048 (Tex. App. – Dallas (March 30, 2016).
[23] *Jackson v. EK Real Estate Servs. of NY, LLC*, 2021 WL 3831990 (S.D. Tex. March 26, 2021) *citing Johnson v. Cherry*, 726 S.W. 2d 4 (Tex. 1987) (internal citations omitted).
[24] *Id.* at *5 citing *Johnson,* 726 S.W. 2d at 6 ("Even when the instrument appears on its face to be a deed absolute, parol evidence is admissible to show that the parties actually intended the instrument as a mortgage").

Here, the testimony and other evidence showed that the Wylys never took possession[25] of the Property during the term of this contract, that Eichor paid the real estate taxes for 2015 and 2016, which was the term of this contract; the appraised value of the property in 2015 was $134,940 and $168,000 in 2016,[26] which was significantly greater than the alleged "purchase price." The evidence at trial support the finding that the transaction between the Eichors and the Wylys was a loan, with the Property and boat securing the loan.

Furthermore, the evidence showed that this contract was satisfied by Eichor in August 2016. As a result, the Court concludes that the Sales Agreement was a loan, and not a contract for the purchase of a home and a boat. Any security interest that the Wylys had in the Property expired when the loan was paid in full in August 2016.

### Second Sales Agreement

Prior to the satisfaction of the Sales Agreement, the same parties entered into Sales Agreement Two.[27] This agreement recites that the same parties entered into a prior Sales Agreement, with had the desire to enter into a similar agreement. Again, Wyly testified that this agreement was for the sale of the Property and the same boat, and not a security agreement. This testimony is not credible as the Property and the boat could not have been sold again if they were sold to him through the first Sales Agreement, which was still pending at the time the parties entered into Sales Agreement Two. In addition, unlike the previous agreement, this one was not

---

[25] In each of the three purported sales, the defendants bought assets (both real and personal property) but didn't take possession. These types of transactions. where a buyer buys assets but then doesn't take possession with the implied covenant that if you pay me back an agreed sum then you as the seller get to keep your assets are in the Court's opinion suspect. They are more typically disguised loans and not the purchase of an asset.
[26] ECF No. 79-13.
[27] ECF No. 79-6. This contract was virtually identical with the Sales Agreement except for the amounts due, and that it included a paragraph regarding the prior Sales Agreement.

recorded in the real property records, and therefore the lien was not perfected[28] as of the date of Eichor's bankruptcy filing.

Although Eichor has argued that Sales Agreement Two was a home equity loan, there was no evidence that this was the parties' intent upon executing Sales Agreement Two.  Again, there are sufficient facts to show that the transaction was a loan and not a sale, especially as the check tendered by Wyly for $50,000.00 contains the notation "Loan."[29]  Therefore, the court may look past form and into substance, to analyze the true nature of this financial transaction.[30]

**Third Sales Agreement**

On January 20, 2017, the parties executed Sales Agreement Three,[31] referencing the first two sales agreements, and stating that they want a similar agreement.  Sales Agreement Three avers that the June 2015 Sales Agreement was satisfied in full, that the balance remaining on Sales Agreement Two is $60,000.00, and that Sales Agreement Three is to "reform, modify and revise" Sales Agreement Two.  Once again, Sales Agreement Three purports to sell the Property to the Wylys, this time for $126,000.00.  Sales Agreement Three was not filed in the real property records and any lien on the Property that the Wylys had was not perfected at the time of Eichor's bankruptcy filing.

As with the first two sales agreements, the Court finds that the Property was Eichor's homestead, that there was no mortgage, and that the Wylys continued to try to assist Eichor and his business with additional loans.

---

[28] *In re Onley*, 48 B.R. 891 (Bankr. N.D. Tex. 1985) (the bank, by filing the deed of trust, had perfected a deed of trust lien against the premises.
[29] ECF No. 79-7.
[30] *In re SRS Capital Funds, Inc.* 2020 WL 1110557 (Bankr. E.D. N.Y. April 13, 2022).
[31] ECF No. 79-9

In general, a conveyance of real property in Texas can only be accomplished by the delivery of a written instrument that is signed and delivered by the conveying party. Moreover, Texas law requires that instruments relating to real property be filed in the county in which the property is located.[32] The Wylys cite to *In re Truman Nguyen*[33] to show that they held equitable title to the Property at the maturity date of Sales Agreement Three. However, in *Nguyen*, there was a recorded deed of trust. It was the recorded deed that gave equitable title to the lender. Here, there were no recorded instruments. Furthermore, the evidence shows that the Wylys did not take possession of the Property until October 2021, eight months after Eichor was discharged.[34]

Sales Agreement Three was no different than the two previous sales agreements and contained identical terms regarding the Property and the boat. Based upon the business dealings of the parties regarding the previous sales agreements, the reasonable construction of Sales Agreement Three is that it is a loan. Further, the Court finds that Sales Agreement Three did not contain any conveyance language as admitted by the Defendants in the Intervention Suit. Due to the failure of the Wylys to record Sales Agreement Three, the Court finds that it was an unsecured debt at the time of Eichor's bankruptcy petition, and the Defendants did not own or have a lien on Eichor's homestead. The Court also finds that the three sales agreements were not home equity loans, and if they could be considered home equity loans, the evidence showed that no cure letter was ever sent as required by the Texas Constitution, Article XVI, § 50(a).

---

[32] *In re Edwards*, 537 B.R. 797 (Bankr. S.D. Tex. 2015) (citing Tex. Prop. Code §§ 5.021 and 11.001 (West 2014)).
[33] 2011 WL 110903 (Bankr. N.D. Tex. 2011).
[34] *In re Edwards, supra*, at 804, *citing Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921). The Texas Supreme Court enforced an oral contract for the sale of real property after a showing of possession and erection of improvements.

**Usury**

Plaintiff's Complaint contains a request that the Court find that the three sales agreements were usurious.  However, the plaintiff offered no evidence in support of this request and the Court makes no finding regarding usury.

**Executory Contract**

Plaintiff requests that the Court find that Sales Agreement Three is an executory contract and that it was rejected pursuant to 11 U.S.C. 365(d)(1) in Eichor's bankruptcy case.  The Fifth Circuit has recently held that the test for an executory contract is the "Countryman test."[35]  First, a contract is executory only if performance remans due to some extent on both sides.  Second, at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party. Here, there was already a breach of contract prior to the filing of the bankruptcy; therefore, it was a nonexecutory contract that was not subject to assumption, rejection, or the ride-through doctrine. Accordingly, plaintiff's request for a finding that Sales Agreement Three was executory is denied.

**Was the Default Judgment Void or Voidable?**

The distinction between void and voidable judgment is critical when the time for a direct attack has expired.[36] It is well settled in Texas that a void judgment may be attacked directly or collaterally, but a voidable judgment may only be attacked directly. After the time to bring a direct attack has expired, a litigant may only attack a judgment collaterally. [37]  Moreover, the case[38] cited by the Defendants for their contention that this Court cannot redetermine the Brazoria County judgment is not at all similar.  That case involved an adjudication of debtor's property rights in a

---

[35] *Argonaut Insurance Company v. Falxon V, L.L.C.*, No. 21-30668 (5th Cir. 2022).
[36] *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, (Tex. 2012).
[37] *Id*. at 271.
[38] *Gleason v. GVL Lake Properties, LLC (In re Gleason)*, 510 B.R. 114 *Bankr. E.D. Ky. 2014).

separate limited liability company, and what that company could do with its real property.  If indeed, the Wylys had held a secured claim at the time of the bankruptcy petition, they would be correct that the in rem judgment would not have violated the discharge.  However, they held no security interest in the Property, there was no perfected lien, and they merely held an unsecured claim.  Furthermore, the Fifth Circuit has said that *Rooker-Feldman*[39] does not preclude review of void state court judgments.[40]

The Plaintiff argues that the judgment is void pursuant to 11 U.S.C. § 524(a), which provides that "A discharge in a case under this title –(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . ." The phrase "at any time obtained" plainly means that judgments voided by the discharge include judgments obtained before, during, and after the bankruptcy.[41]  Accordingly, the Court finds that the default judgment was void.

**Violation of the Discharge Injunction**

At the time of Eichor's bankrupty filing, he listed the Property as his homestead.  He also listed Benson Wyly as an unsecured creditor.  It was undisputed that Wyly was aware of the bankruptcy petition as he filed a suggestion of bankruptcy in the Intervention Suit.  Eichor was granted a discharge on February 9, 2021 under 11 U.S.C. § 727.  The discharge order that was entered explains that creditors may not make any attempt to collect a discharged debt from the debtor personally.  It further explains that some debts may not be discharged, that special rules protect community property and that creditors may pursue anyone else liable on the debt.[42]  This

---

[39] The *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments' except when authorized by Congress." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc*., 2022 WL 3593973 (5th Cir. Aug. 23, 2022)
[40] *Burciaga v. Deutsche Bank National Trust Company*, 871 F.2d 380 (5th Cir. 2017) *citing United States v. Shepherd*, 23 F.3d 923, 925 (5th Cir. 1994).
[41] *In re Gurrola*, 328 B.R. 158 (9th Cir. B.A.P. 2005).
[42] Case No. 20-35221, ECF No. 22.

order was properly served on Benson Scott Wyly in care of his attorney, Keith Gross by first class mail.

Despite the receipt of the order of discharge, Benson Wyly through his attorney Keith Gross caused Eichor to be served with a copy of the Intervention Suit on April 6, 2021.[43]  Eichor's counsel later sent correspondence to Keith Gross advising him again of the discharge, that the motion for default judgment in the Intervention Suit violates that discharge injunction, and that any decision rendered by the court in the Intervention Suit may be void.[44]

The purpose of the discharge injunction is to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.[45]  The Wylys assert that the service of the summons, and the continued prosecution of the Intervention Suit were not an attempt to collect a debt against Eichor personally, but only to proceed in rem on their lien against the Property.  It is undisputed that the Intervention Suit that was served on Eichor in March of 2021 requested personal damages.  Then, even after being advised that the prosecution of the suit was a violation of the discharge injunction by Eichor's counsel, and that counsel intended to file suit on that basis, the Wylys willfully proceeded with obtaining a judgment in the Intervention Suit. Instead, if they believed that they were entitled to an exception from the discharge, the Wylys should have brought an action to obtain the requisite determination of that exception.

Simply stated the Court finds that any attempt to enforce the debts held by the defendant post discharge, including an attempt to quiet title to the real property in question violated the discharge injunction.  The debts held by the defendants were unsecured, they had not perfected

---

[43] ECF No. 79-22.
[44] ECF No. 80-4
[45] *In re Mooney*, 340 B.R. 351 (Bankr. E.D. Tex. 2006).

liens for the reasons stated herein. They were discharged in the Chapter 7. The defendants' attempt to quiet title was simply an "end run"[46] around the discharge injunction.

The Court finds that the Wylys willfully violated the discharge injunction in this case. Bankruptcy courts possess the authority to impose civil sanctions for a party's willful violation of the discharge injunction; including, actual damages, attorney's fees, and if appropriate, punitive damages.[47] Eichor has requested actual damages, attorney's fees and punitive damages of up to 9 times the amount of actual damages in this case. Upon review of the evidence presented, the Court finds that actual damages of $22,750.00,[48] plus reasonable attorneys' fees of $40,121.22 (ECF 79-24) are warranted pursuant to 11 U.S.C. § 105. The Court declines to award punitive damages, due to the state court judgment awarded to the defendants. Additionally, the Court awards title of the real property known as LOT TWENTY-SIX (26), BLOCK ONE (1), OF WESTWOOD VILLAGE, SECTION TWO (2), FINAL PLAT, AN ADDITION IN BRAZORIA COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 17, PAGE 337, OF THE PLAT RECORDS OF BRAZORIA COUNTY, TEXAS, and popularly known as 4012 Beechwood Drive, Pearland, Texas 77584 to the plaintiff, Johnnie G. Eichor.

The Court will issue a separate Final Judgment.

SIGNED 09/07/2022

Jeffrey Norman
United States Bankruptcy Judge

---

[46] Evade, circumvent.
[47] *In re Mooney, supra* at 360.
[48] The Court awards 13 months of actual damage of $1,750.00 per month for loss of use of the debtor's homestead and personal property beginning the first full month that the defendants were given actual notice of the plaintiff's claim by plaintiff's counsel (ECF No. 80-4) to the date of the Court's interim turnover order (ECF No. 85). The Court declines to award damages prior to August 1, 2021 as the defendants were operating under the color of a void state court judgment that awarded possession and ownership of the real property to them. See *Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019), holding that, in order to hold a creditor in civil contempt for violating a discharge order, the debtor must show there was no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

16 / 16